**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

D3D Technologies, Inc.,

                    Plaintiff,

v.                                                Case No.: 6:20-cv-1699-GAP-DCI

Microsoft Corporation,

                    Defendant.

**DEFENDANT MICROSOFT CORPORATION'S MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED AND SUPPLEMENTAL**
**<u>COMPLAINT IN PART AND MEMORANDUM OF LAW IN SUPPORT</u>**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ............................................................................................. 4

III.   LEGAL STANDARD....................................................................................... 4

IV.    ARGUMENT .................................................................................................. 5

    A.     D3D's IVAS-Based Infringement Claims Should Be Dismissed With
    Prejudice Because Section 1498 Provides That D3D's Only Remedy
    Is an Action Against the United States in the United States Court of
    Federal Claims .................................................................................... 5

        1.     The Amended Complaint Alleges That the Accused
        Infringing Activity Was for the Government.................................. 7

        2.     The Amended Complaint Alleges That the Government
        Authorized and Consented to the Accused Infringing Activity...... 8

            a.     The Government Expressly Authorized and Consented
            to Alleged Infringement by IVAS........................................ 9

            b.     The Amended Complaint Also Alleges Implied
            Authorization and Consent ................................................ 11

    B.     D3D's Indirect Infringement Claims Should Be Dismissed With
    Prejudice Because the Amended Complaint Fails to Plead Pre-Suit
    Knowledge of Infringement ................................................................ 15

        1.     The Amended Complaint Fails to Plead Pre-Suit Knowledge
        of Infringement ........................................................................ 16

        2.     D3D's Indirect Infringement Claims Should Be Dismissed........ 18

V.     CONCLUSION ............................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Advanced Software Design Corp. v. FRB of St. Louis*,
   583 F.3d 1371 (Fed. Cir. 2009)...........................................................12, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................4, 5, 19

*Astornet Techs., Inc. v. Bae Sys., Inc.*,
   802 F.3d 1271 (Fed. Cir. 2015)...........................................................2, 3, 6

*BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Aeroflex Inc.*,
   No. 09-769-LPS, 2011 WL 3474344 (D. Del. Aug. 2, 2011).......................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................5

*Bingham v. Thomas*,
   654 F.3d 1171 (11th Cir. 2011) ........................................................5, 7, 10

*Bonutti Skeletal Innovations LLC v. Linvatec Corp.*,
   No. 6:12-cv-1379-ORL-22TBS, 2013 WL 12156091
   (M.D. Fla. Apr. 2, 2013) ....................................................................3, 15, 18

*Brandywine Comm'cns Techs. v. Centurytel Broadband Servs.*,
   No. 6:12-cv-286-ORL-36DAB, 2014 WL 12866968
   (M.D. Fla. Jan. 15, 2014)....................................................................15, 16, 18

*Brandywine Commc'ns Tech., LLC v. Casio Computer Co.*,
   912 F. Supp. 2d 1338 (M.D. Fla. 2012)..............................................18

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)......................................................................16

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) .........................................................9

*Decca, Ltd. v. United States*,
   640 F.2d 1156 (Ct. Cl. 1980) .............................................................3

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011).........................................................................16, 18

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
 910 F.3d 1186 (11th Cir. 2018) ...................................................................9, 10, 14

*Iguana, LLC v. Lanham*,
 No. 7:08-CV-09 (CDL), 2009 WL 1620586 (M.D. Ga. June 9, 2009) ..................7, 11

*Iris Corp. v. Japan Airlines Corp.*,
 769 F.3d 1359 (Fed. Cir. 2014)............................................................... *passim*

*Murphy v. DCI Biologicals Orlando, LLC*,
 No. 6:12-CV-1459-ORL, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd*,
 797 F.3d 1302 (11th Cir. 2015) ...................................................................5

*Open Text S.A. v. Box, Inc.*,
 No. 13-CV-04910-JD, 2015 WL 428345 (N.D. Cal. Jan. 30, 2015) ............................8

*Orlando Comm'cns LLC v. LG Elecs., Inc.*,
 No. 6:14-CV-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015)........16, 18

*Proxyconn Inc. v. Microsoft Corp.*,
 No. SACV 11-1681, 2012 WL 1835680 (C.D. Cal. May 16, 2012) .........................18

*Richmond Screw Anchor Co. v. United States*,
 275 U.S. 331 (1928)............................................................................................2

*Saint Switch v. Gen. Motors of Can.*,
 No. 95 C 0250, 1996 U.S. Dist. LEXIS 2762 (N.D. Ill. Mar. 7, 1996) ......................6

*Sams v. Yahoo! Inc.*,
 713 F.3d 1175 (9th Cir. 2013) ...................................................................5

*Sevenson Envtl. Svcs., Inc. v. Shaw Envtl., Inc.*,
 477 F.3d 1361 (Fed. Cir. 2007)..........................................................................8

*TVI Energy Corp. v. Blane*,
 806 F.2d 1057 (Fed. Cir. 1986).............................................................8, 14

*Va. Panel Corp. v. MAC Panel Co.*,
 133 F.3d 860 (Fed. Cir. 1997)...........................................................................2, 6

*Wi-LAN USA, Inc. v. Research in Motion Ltd.*,
 Case No. 12-cv-24349-DMM/DLB, 2013 WL 12092486 (S.D. Fla. June 7, 2013)....18

**Statutes**

28 U.S.C. § 1498...................................................................................... *passim*

**Other Authorities**

48 C.F.R. § 2.101 ................................................................................................13

48 C.F.R. § 52.227-1 .............................................................................................9

Federal Rule of Civil Procedure 12(b)(6) ...................................................1, 15

Defendant Microsoft Corporation ("Microsoft"), through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves to dismiss with prejudice the following claims in Plaintiff D3D Technologies, Inc.'s ("D3D's") First Amended and Supplemental Complaint (Dkt. No. 28-0) ("Amended Complaint" or "Am. Compl.") for failure to state a claim upon which relief can be granted: (A) all infringement claims based on the U.S. Army's Integrated Visual Augmentation System ("IVAS") using Microsoft technology because, under 28 U.S.C. § 1498(a), D3D's only remedy is an action against the United States in the United States Court of Federal Claims; and (B) all indirect infringement claims because D3D cannot plead pre-suit knowledge of the alleged infringement.

## MEMORANDUM OF LEGAL AUTHORITY

## I.    INTRODUCTION

D3D asserts five patents against Microsoft's mixed reality headset innovations, claiming that its patents, directed to allegedly novel technologies related to "three-dimensional viewing and manipulation of images" and "manipulation of three-dimensional volumes from any three-dimensional image," are infringed by "HoloLens 1" and HoloLens 2 headsets, as well as Microsoft's efforts developing IVAS for the U.S. Army. Am. Compl. ¶¶ 17–18, 35–36, 71–72, 107–08, 143–44, 173–74.  "IVAS" refers to the U.S. Army's program to design, build and deploy a modernized, purpose-built soldier computing system which includes a mixed reality headset.

D3D's IVAS-based claims are asserted against the wrong party, in the wrong court, because D3D recognizes that Microsoft's allegedly infringing activities took place

1

pursuant to a contract for the exclusive benefit of the United States government. Specifically, the Amended Complaint alleges that "[t]he United States Army awarded Microsoft a $480 million contract to supply the military branch with [IVAS] augmented reality technology" that is "based on an [allegedly infringing] enhanced HoloLens 2 design." Am. Compl. ¶ 36. Pursuant to 28 U.S.C. § 1498(a), D3D's exclusive remedy for infringement by IVAS is an action against the United States in the U.S. Court of Federal Claims.

Section 1498 was enacted by Congress to protect government contractors from patent infringement claims, thereby ensuring that the federal government can procure necessary goods and services without the delays and complications associated with allegations of patent infringement.[1] Section 1498 provides that "as to goods 'used or manufactured by or for the United States,' the contractor will not be liable for its [allegedly] infringing acts."[2] Rather, as the Supreme Court explained, Section 1498 "deprives the owner of the patent of a remedy against the [allegedly] infringing private contractor for [alleged] infringements thereof and makes the Government indemnitor for its manufacturer or contractor in his infringements."[3]

---

[1] *See Astornet Techs., Inc. v. Bae Sys., Inc*., 802 F.3d 1271, 1277 (Fed. Cir. 2015).
[2] *Va. Panel Corp. v. MAC Panel Co*., 133 F.3d 860, 869 (Fed. Cir. 1997) (quoting 28 U.S.C. § 1498).
[3] *See Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 346 (1928) (interpreting Section 1498's predecessor); *see also id.* at 343 (describing that the statute "effects an assumption of liability by the Government").

In view of Section 1498, D3D's Prayer for a broad permanent injunction is particularly inappropriate.[4]  Microsoft was awarded a contract to support the U.S. Army's IVAS program.  Seeking to enjoin Microsoft from performing under the IVAS contract contradicts the public policy that undergirds Section 1498, which expressly permits the United States and its contractors to utilize patented technology under these circumstances.[5]  Section 1498 was enacted to safeguard the government's ability to procure goods and services from its contractors without the expense or delays caused by the threat of patent infringement litigation, while retaining for patent owners the right to sue the government for money damages in the U.S. Court of Federal Claims.  D3D is not permitted to seek relief for its IVAS-based claims against Microsoft in this Court.  These infringement allegations must therefore be dismissed with prejudice.

D3D's indirect infringement claims should also be dismissed with prejudice.  To plausibly allege a claim for indirect infringement, "pre-suit knowledge of the existence of the relevant patent and its infringement must be alleged . . . ."[6]  While D3D's Amended Complaint attempts to allege pre-suit knowledge of some of the asserted patents, the Amended Complaint does not make any allegation that Microsoft had ***pre-suit knowledge of the alleged infringement*** of the asserted patents, nor does it suggest that D3D has any

---

[4] *Compare* Am. Compl. at caption and 81 (seeking permanent injunction) *with Decca, Ltd. v. United States*, 640 F.2d 1156, 1166–67 (Ct. Cl. 1980) ("The Government has a right to take patent licenses and cannot be enjoined from doing this. Moreover, a contractor engaging in patent-infringing manufacture or use pursuant to an authorization thereof contained in a procurement contract with the Government cannot be enjoined from its patent-infringing activity.").

[5] *See Astornet*, 802 F.3d at 1277.

[6] *Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, No. 6:12-cv-1379-ORL-22TBS, 2013 WL 12156091, at *3 (M.D. Fla. Apr. 2, 2013).

3

good-faith basis for making such an allegation.  In fact, D3D alleges that prior to this suit, D3D "described to [Microsoft] the patented technology and how it could be used to improve the Microsoft HoloLens product"—suggesting that Microsoft has never practiced D3D's patents in the first place.  Am. Compl. ¶ 28.  Accordingly, D3D's indirect infringement claims should be dismissed with prejudice.

## II.    BACKGROUND

D3D filed its original Complaint on September 16, 2020.  On November 20, 2020, D3D filed the Amended Complaint alleging that Microsoft infringes U.S. Patent Nos. 8,384,771 ("the '771 Patent"), 9,349,183 ("the '183 Patent"), 9,473,766 ("the '766 Patent"), 9,980,691 ("the '691 Patent"), and 10,795,457 ("the '457 patent") (collectively, "the asserted patents").  Am. Compl. ¶¶ 9–14.  D3D alleges that Microsoft has both directly and indirectly infringed the asserted patents in connection with activities associated with the following alleged Microsoft products: "HoloLens 1," HoloLens 2, and the Integrated Visual Augmentation System ("IVAS").  *Id.* ¶¶ 36, 72, 108, 144, 174.

Microsoft notified D3D of its intent to file the present motion on December 4, 2020, and the parties conferred on December 9, 2020.  D3D opposes this motion.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" do not satisfy the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Simply pleading facts that are "merely consistent" with a defendant's alleged liability is insufficient.  *See Twombly*, 550 U.S. at 548.

"A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint."  *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011); *see also Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at \*5 (M.D. Fla. Dec. 31, 2013), *aff'd*, 797 F.3d 1302 (11th Cir. 2015) (same); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense.") (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

## IV.    ARGUMENT

### A.    D3D's IVAS-Based Infringement Claims Should Be Dismissed With Prejudice Because Section 1498 Provides That D3D's Only Remedy Is an Action Against the United States in the United States Court of Federal Claims

By operation of statute, Microsoft is not the appropriate defendant for D3D's IVAS-based infringement claims, and this Court is not the appropriate forum.  *See* 28 U.S.C. § 1498.  Section 1498 provides:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner

thereof or lawful right to use or manufacture the same, ***the owner's remedy shall be by action against the United States in the United States Court of Federal Claims*** for the recovery of his reasonable and entire compensation for such use and manufacture . . . .

For the purposes of this section, the use or ***manufacture of an invention described in and covered by a patent of the United States by a contractor***, a subcontractor, or any person, firm, or corporation ***for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States***.

28 U.S.C. § 1498(a) (emphasis added).

The purpose of Section 1498 is "'to stimulate contractors to furnish what [is] needed' by the government, ***'without fear of becoming liable*** themselves for infringements to inventors or the owners or assignees of patents.'" *Astornet*, 802 F.3d at 1277 (emphasis added) (quoting *Richmond Screw*, 275 U.S. at 345). In fact, the statute was amended in 1918 specifically "to prevent patent infringement suits from interfering with the supply of war materials during World War I. The Congressional concern was that if contractors feared an infringement suit, they might decide not to manufacture desperately-needed products for the United States' war effort." *Saint Switch v. Gen. Motors of Can.*, No. 95 C 0250, 1996 U.S. Dist. LEXIS 2762, at *5-6 (N.D. Ill. Mar. 7, 1996) (internal citations omitted). Here, not only does Microsoft deny all of D3D's infringement allegations, but Microsoft's efforts relating to the government's IVAS program fall squarely within the activities that Congress intended to insulate by enacting Section 1498.

Establishing an affirmative defense under Section 1498 requires showing that the alleged infringement is (i) "for the Government" and (ii) "with the authorization or consent of the Government." *See Va. Panel*, 133 F.3d at 869 (discussing Section 1498 as an affirmative defense); *Iris Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir.

2014). As explained below, the allegations in D3D's Amended Complaint meet both requirements. Thus, D3D's infringement allegations regarding IVAS should be dismissed because D3D's Amended Complaint pleads facts establishing Microsoft's affirmative defense under Section 1498. *See Bingham*, 654 F.3d at 1175 ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint."); *Iguana, LLC v. Lanham*, No. 7:08-CV-09 (CDL), 2009 WL 1620586, at *4 (M.D. Ga. June 9, 2009) (dismissing patent infringement counter-claim in part because the facts alleged in the counter-claim showed that the appropriate remedy was a claim against the United States, pursuant to 28 U.S.C. § 1498); *Iris*, 769 F.3d at 1362–63 (affirming dismissal because liability was precluded under 28 U.S.C. § 1498).

### 1. The Amended Complaint Alleges That the Accused Infringing Activity Was for the Government

The first prong of Section 1498 requires that the allegedly infringing activity be "for the Government." *Iris*, 769 F.3d at 1362. Here, the Amended Complaint alleges sufficient facts showing that Microsoft's development work for IVAS is work for the federal government. The Amended Complaint specifically alleges that the "United States Army awarded Microsoft a $480 million contract to supply the military branch with augmented reality technology." Am. Compl. ¶ 36. The Amended Complaint also cites to a 2019 Article entitled "Soldiers test new IVAS technology, capabilities with hands-on exercises." *Id.* The Amended Complaint quotes a portion of that article wherein the United States Army allegedly stated that IVAS will be "useful for training and rehearsing operations anywhere at any time" and is expected to "'enhance the survivability' of

7

combatants" and "save civilian lives."  *Id.*  The Amended Complaint even shows pictures of the U.S. Army testing the IVAS technology.  *See id.*

The aforementioned allegations clearly show that the accused activity here is "for the Government"; the U.S. Army has contracted for the development of and benefited from IVAS.  These allegations are more than sufficient to meet the "for the Government" prong of Section 1498.  *See Sevenson Envtl. Svcs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007) ("[T]he 'for the Government' prong of the definition appears to impose only a requirement that the use or manufacture of a patented method or apparatus occur pursuant to a contract with the government and for the benefit of the government."); *see also Open Text S.A. v. Box, Inc*., No. 13-CV-04910-JD, 2015 WL 428345, at *2 (N.D. Cal. Jan. 30, 2015) ("Courts have found that sales can be 'for the Government' when the sale is to the federal government and the government uses the product.").

### 2.     The Amended Complaint Alleges That the Government Authorized and Consented to the Accused Infringing Activity

The second prong of Section 1498 requires that the allegedly infringing activity be done "with the authorization or consent of the Government."  *Iris*, 769 F.3d at 1362.  "The government's authorization or consent may be either express or implied."  *Iris*, 769 F.3d at 1362; *see also TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986) ("To limit the scope of § 1498 only to instances where the Government requires by specification that a supplier infringe another's patent would defeat the Congressional intent to allow the Government to procure whatever it wished regardless of possible patent infringement.").  Here, D3D's Amended Complaint alleges numerous facts showing that the government both expressly ***and*** impliedly authorized and consented to the allegedly infringing activity.

### a.  The Government Expressly Authorized and Consented to Alleged Infringement by IVAS

First and foremost, the government *expressly* authorized and consented to the allegedly infringing activity.  The Amended Complaint references the IVAS contract and several related documents, which show that the government has expressly authorized and consented to the allegedly infringing activity.   Am. Compl. ¶ 36; Ex. A (Contract No. W91CRB1990001, Mod. P00016, May 12, 2020) at 16 (section J).[7]  The contract shows that the government incorporated by reference the authorization and consent language identified in Federal Acquisition Regulation § 52.227-1, Alternate I (Apr. 1984).  *See id.*; Ex. B (48 C.F.R. § 52.227-1) at 1.  This language includes the following clause: "The Government ***authorizes and consents to all use and manufacture of any invention described in and covered by a United States patent in the performance of this contract*** or any subcontract at any tier."  48 C.F.R. § 52.227-1 Alternate 1 (emphasis added); Ex. B at 1; *see also BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Aeroflex Inc.*, No. 09-769-LPS, 2011 WL 3474344, at *13 (D. Del. Aug. 2, 2011) (noting the breadth of this clause).

The Court may consider the IVAS contract without converting this Motion to Dismiss into a Motion for Summary Judgment because the IVAS contract is "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."  *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming a district court's decision that

---

[7] All exhibits cited herein are attached to the Declaration of Jacqueline Tio in Support of Microsoft's Motion to Dismiss, submitted herewith.

considered a private contract attached to a motion to dismiss without converting the motion to dismiss into a motion for summary judgment because the private contract was central to the Complaint and of undisputed authenticity).

Here, the IVAS contract is clearly "referred to in the complaint." Am. Compl. ¶ 36; *Hi-Tech Pharm*, 910 F.3d at 1189. The IVAS contract is also "central to [D3D's] claim[s]" because the only IVAS-specific acts of infringement that D3D alleges are those associated with Microsoft agreeing to supply the IVAS technology to the government pursuant to the alleged governmental contract. *See* Am. Compl. ¶ 36; *Hi-Tech Pharm*, 910 F.3d at 1189. Finally, D3D cannot credibly dispute the authenticity of the IVAS contract, at least because D3D relies on press releases concerning this contract in its Amended Complaint and the solicitation documents relating to this contract in its infringement charts attached to the Amended Complaint. *See, e.g.,* Dkt. No. 28-5 at 7 (citing a Statement of Objectives ("SOO") at https://uploadvr.com/wp-content/uploads/2018/11/Army-AR-Objectives.pdf); *id*. at 12, 14, 17, 35, 37, 40, 42 (same); Dkt. No. 28-6 at 7, 12, 14, 17, 35, 37, 40, 42 (same); Dkt. No. 28-7 at 5, 6, 8–9, 11, 33 (same). Because the IVAS contract is central to D3D's IVAS-based infringement allegations and D3D cannot credibly dispute the contract's authenticity without contradicting the allegations of its Amended Complaint, the Court may consider the IVAS contract without converting this Motion into a Motion for Summary Judgment. *See Hi-Tech Pharm*, 910 F.3d at 1189.

D3D's claims accusing IVAS should thus be dismissed because the alleged infringement was conducted for the government, and with its express authorization and consent (as evidenced by the IVAS contract itself). *Bingham*, 654 F.3d at 1175 ("A

complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint."); *Iris*, 769 F.3d at 1362 (affirming dismissal because liability was precluded under 28 U.S.C. § 1498); *Iguana*, 2009 WL 1620586, at *4 (dismissing patent infringement counter-claim in part because the facts alleged in the counter-claim showed that the appropriate remedy was a claim against the United States, pursuant to 28 U.S.C. § 1498).

### b.  The Amended Complaint Also Alleges Implied Authorization and Consent

In the alternative, the Court can dismiss D3D's IVAS-based claims on this motion relying solely on the Amended Complaint.  Specifically, the Amended Complaint alleges facts showing that the government *impliedly* authorized and consented to the allegedly infringing activity by (i) contractually requiring Microsoft to supply the government with the allegedly infringing IVAS technology; and (ii) being involved in the IVAS testing and development process.

To start, the Amended Complaint alleges that "[t]he United States Army **awarded** Microsoft a $480 million **contract to supply** the military branch with [IVAS] augmented reality technology."  Am. Compl. ¶ 36 (emphasis added).  The Amended Complaint also alleges facts showing that Microsoft could not comply with its obligations under the alleged contract without engaging in the allegedly infringing activity.  For example, the Amended Complaint alleges that IVAS is "based on an enhanced HoloLens 2 design," that HoloLens 2 is an infringing technology, and that the contract between the government and Microsoft can be characterized as a "HoloLens Contract."  *See id.* (citing a 2018 article entitled "Microsoft secures $480 million **HoloLens contract** from US Army") (emphasis added); *see also* Dkt. No. 28-5 at 8 (alleging that "**HoloLens 2 is the foundation for IVAS**,

11

and as such HoloLens 2 capabilities and functionalities are, and should be considered, representative of IVAS capabilities and functionalities . . . .") (emphasis added); Dkt. No. 28-6 at 8 (same); Dkt. No. 28-7 at 6 (same).  Taking the allegations in the Amended Complaint as true, it is undisputed by D3D that Microsoft "cannot comply with its legal obligations without engaging in the allegedly infringing activities" because the alleged contract requires Microsoft to supply the government with the allegedly infringing technology.  *See Iris*, 769 F.3d at 1362.  The Amended Complaint therefore alleges that the government impliedly authorized and consented to the allegedly infringing activity via the alleged contractual requirements.  *See id.*

The Amended Complaint also alleges that the government impliedly authorized and consented to the allegedly infringing activity because the government has been involved in the IVAS testing and development process.  *See Advanced Software Design Corp. v. FRB of St. Louis*, 583 F.3d 1371, 1376 (Fed. Cir. 2009).  In particular, the Amended Complaint alleges that "Microsoft and the Army are engaged in wide-ranging, hands-on testing of the IVAS system with an expected deployment in 2021."  Am. Compl. ¶ 36; *see also* Dkt. No. 28-5 at 25 ("On information and belief, the IVAS program has been testing such terrain mapping software that converts 2D slices to 3D images."); Dkt. No. 28-6 at 25 (same).  The Amended Complaint also shows pictures of the United States Army testing the IVAS technology.  Am. Compl. ¶ 36.  By allegedly accepting the IVAS system from Microsoft and being involved in the testing process, the United States Army has impliedly consented to and authorized the allegedly infringing activity.  *See Advanced Software Design*, 583 F.3d at 1376.

In *Advanced Software Design*, the patents related to a method for detecting fraudulent bank checks, and the patentee sued multiple Reserve Banks for infringing the patents. *Id.* at 1373–74. The United States Treasury was involved in the Reserve Banks' testing of the patented technology, and "[t]he district court held that the [United States] Treasury's agreement to participate with the Reserve Banks in testing and then in using the [allegedly infringing] system and software constituted authorization or consent to use the technology and accept liability for patent infringement if such should be present." *Id.* at 1376. The Federal Circuit affirmed the district court's decision. *Id.* at 1377. Similarly, here, the Amended Complaint alleges that the government has been involved in testing and using the allegedly infringing IVAS technology. Am. Compl. ¶ 36. Thus, the Amended Complaint alleges that the government has impliedly authorized and consented to the allegedly infringing activity. *See Advanced Software Design*, 583 F.3d at 1373–77.

The government's implied authorization and consent is further evidenced by D3D's heavy reliance on a document entitled "STATEMENT OF OBJECTIVES (SOO), For Prototype Project Agreement (PPA), Integrated Visual Augmentation System (IVAS) Program" ("SOO"), which the Amended Complaint incorporates by reference. *See* Dkt. No. 28-5 at 7 (citing https://uploadvr.com/wp-content/uploads/2018/11/Army-AR-Objectives.pdf); *id.* at 12, 14, 17, 35, 37, 40, 42 (same); Dkt. No. 28-6 at 7, 12, 14, 17, 35, 37, 40, 42 (same); Dkt. No. 28-7 at 5, 6, 8–9, 11, 33 (same). A SOO is a document prepared by the government and incorporated into a solicitation. 48 C.F.R. § 2.101. Here, the title shows that the government—not Microsoft—named the project "IVAS." And the SOO reflects the government's expectation that a bidder will "deliver to the Government within

24 months four Capability Sets (CS) evaluated during multiple STPs [or Soldier Touch Point engagements]" and that "STPs will occur in controlled environments initially and progress to Arctic, Desert, Jungle, Urban and Subterranean environments – capability of prototype builds will shape each event." Ex. C (SOO) at 3. Thus, the SOO shows that the government expected bidders to deliver and demonstrate the allegedly infringing technology to the government, thereby further evidencing that the government impliedly authorized and consented to Microsoft's use and development of the IVAS technology based on the allegedly infringing "enhanced HoloLens 2 design." *See TVI Energy*, 806 F.2d at 1060; Am. Compl. ¶ 36.

Consideration of the SOO does not require converting this Motion to Dismiss into a Motion for Summary Judgment, because the SOO, like the IVAS contract, is central to D3D's claims. For example, D3D relies heavily upon the SOO's technical description to substantiate its claim that IVAS infringes the asserted patents. Dkt. No. 28-5 at 7 (citing https://uploadvr.com/wp-content/uploads/2018/11/Army-AR-Objectives.pdf); *id.* at 12, 14, 17, 35, 37, 40, 42 (same); Dkt. No. 28-6 at 7, 12, 14, 17, 35, 37, 40, 42 (same); Dkt. No. 28-7 at 5, 6, 8–9, 11, 33 (same). Without the SOO, D3D's Amended Complaint would be devoid of facts to sufficiently plead the alleged infringement by IVAS. Authenticity cannot be seriously disputed, because the SOO attached to this Motion was downloaded from the same website cited in the Amended Complaint's infringement charts. Tio Decl. ¶ 4. Because the SOO is central to D3D's IVAS-based infringement allegations, and is likely of undisputed authenticity, the Court may consider the SOO without converting this Motion into a Motion for Summary Judgment. *See Hi-Tech Pharm*, 910 F.3d at 1189.

14

In sum, Microsoft respectfully requests that the Court dismiss D3D's IVAS-based infringement claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because the allegations in the four corners of the Amended Complaint show that Microsoft is protected from liability by Section 1498 and its underlying public policy concerns, and this conclusion is further supported by the SOO, which is repeatedly referred to by the Amended Complaint and central to D3D's claims of infringement.  Moreover, amendment of the Amended Complaint cannot cure the Amended Complaint's deficiencies because no set of additional facts can change the fact that the allegedly infringing IVAS-based activity was conducted for the federal government and with its authorization and consent.  Any such claims against IVAS must be brought against the government in the U.S. Court of Federal Claims.  *See* 28 U.S.C. § 1498.  Microsoft therefore respectfully requests that D3D's IVAS-based infringement claims be dismissed with prejudice.

**B.     D3D's Indirect Infringement Claims Should Be Dismissed With Prejudice Because the Amended Complaint Fails to Plead Pre-Suit Knowledge of Infringement**

To plausibly state a claim for indirect infringement, a plaintiff must plead that the defendant had pre-suit knowledge of both the asserted patents and infringement of the patents.  *Brandywine Comm'cns Techs. v. Centurytel Broadband Servs*., No. 6:12-cv-286-ORL-36DAB, 2014 WL 12866968, at *7 (M.D. Fla. Jan. 15, 2014) ("[A] plaintiff asserting claims of indirect infringement is required to allege that defendants had ***knowledge*** of the patents-in-suit ***before the filing of the suit***.") (emphasis added); *Bonutti*, 2013 WL 12156091, at *3 ("The Court . . . holds that ***pre-suit knowledge*** of the existence of the relevant patent ***and its infringement*** must be alleged in a complaint for indirect

infringement.") (emphasis added); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926-28 (2015) (holding that demonstrating induced or contributory infringement also "requires proof the defendant knew the acts were infringing" and rejecting argument that "only knowledge of the patent is required"); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011) (stating that indirect infringement (contributory and induced) requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement").

In this district, post-suit knowledge of D3D's infringement allegations cannot sustain claims of indirect infringement. *Brandywine Comm'ns Techs.*, 2014 WL 12866968, at *7; *Orlando Comm'ns LLC v. LG Elecs., Inc.*, No. 6:14-CV-1017-ORL-22, 2015 WL 1246500, at *9 (M.D. Fla. Mar. 16, 2015) ("If post-suit notification were permissible, then the knowledge / willful blindness requirement would be meaningless – of course alleged infringers have actual knowledge of the patent(s) at issue once they have received the complaint.") (quoting *Bonutti*, 2013 WL 12156091, at *3).

### 1.    The Amended Complaint Fails to Plead Pre-Suit Knowledge of Infringement

D3D's indirect infringement claims fail to state a claim upon which relief can be granted because they fail to plead that Microsoft had any pre-suit knowledge of the alleged infringement of the asserted patents.  The only allegations in the Amended Complaint that speak to any pre-suit knowledge are that: (i) on October 5, 2016, D3D's Dr. Robert Douglas allegedly e-mailed Microsoft employee Dr. Peter Lee and attached publications that reference the '771 Patent and '183 Patent; (ii) in August 2017, D3D's Dr. Robert Douglas

allegedly showed the '771 Patent to Microsoft employees Stacey Brown and Michael Erickson at a symposium and later emailed them both the aforementioned publications that reference the '771 and '183 Patents; and (iii) on May 7, 2019, D3D's Dr. Robert Douglas allegedly e-mailed Microsoft employee Michael Erickson and identified and described four of the patents asserted here. Am. Compl. ¶¶ 26–29. For the '457 Patent, the only knowledge that D3D alleges is based on the filing of the Amended Complaint on November 20, 2020, which clearly does not constitute pre-suit knowledge. *Id.* ¶ 175. In sum, none of these allegations suggest that D3D ever informed Microsoft that it believed Microsoft was infringing the asserted patents prior to this lawsuit.

In fact, the allegations in the Amended Complaint suggest the ***opposite***. According to the Amended Complaint, in August 2017, Dr. David Douglas was at a symposium and "saw a demonstration by Microsoft for a new product called HoloLens. HoloLens had a limited degree of imaging, and Dr. David Douglas believed that the ***HoloLens would be significantly enhanced if it used D3D's true 3D technology***." Am. Compl. ¶ 27 (emphasis added). The Amended Complaint further states that "Dr. David Douglas provided detailed information and a demonstration of the D3D technology to [Microsoft employees], and described them to them the patented technology and ***how it could be used to improve the Microsoft HoloLens product***." *Id.* ¶ 28 (emphasis added). Taken as true, these allegations establish that D3D believed that Microsoft's HoloLens ***was not using*** D3D's allegedly patented technology, and that Dr. David Douglas hoped Microsoft would ***one day in the future*** incorporate D3D's technology into HoloLens and take a license from D3D. Such allegations fail to state a plausible claim that Microsoft had "pre-suit knowledge of the

existence of the relevant patent *and its infringement*"—and, in fact, describe pre-suit communications from D3D suggesting that Microsoft did not infringe.  *See Bonutti*, 2013 WL 12156091, at *3 (emphasis added).

## 2.  D3D's Indirect Infringement Claims Should Be Dismissed

Courts in this district and the Eleventh Circuit have rejected attempts by plaintiffs to sustain indirect infringement claims based on knowledge obtained on or after the filing of the Complaint.  *Orlando Comm'cns LLC*, 2015 WL 1246500, at *9–12; *Brandywine Comm'cns Techs.*, 2014 WL 12866968, at *7; *Bonutti*, 2013 WL 12156091, at *3; *Wi-LAN USA, Inc. v. Research in Motion Ltd.*, Case No. 12-cv-24349-DMM/DLB, 2013 WL 12092486, at *3 (S.D. Fla. June 7, 2013) ("The weight of authority addressing the knowledge required for indirect infringement, especially following the Supreme Court's decision in *Global-Tech*, requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit.") (internal quotations omitted); *Brandywine Commc'ns Tech., LLC v. Casio Computer Co.*, 912 F. Supp. 2d 1338, 1345 (M.D. Fla. 2012) (same).

Here, too, D3D's indirect infringement claims fail to plausibly allege that Microsoft had pre-suit knowledge of the alleged infringement and should therefore be dismissed.  *See, e.g., Brandywine*, 2014 WL 12866968, at *7 (dismissing induced and contributory infringement claims with prejudice where plaintiff failed to allege pre-suit knowledge); *Orlando*, 2015 WL 1246500, at *12 (dismissing indirect infringement claims without leave to amend); *Proxyconn Inc. v. Microsoft Corp*., No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at *7 (C.D. Cal. May 16, 2012) (dismissing indirect infringement claims with prejudice where plaintiff conceded that it could not allege defendants'

knowledge of the patent-in-suit prior to the filing of the original complaint); *Iqbal*, 556 U.S. at 678.

Moreover, the allegations of the Amended Complaint do not suggest that D3D has any good-faith basis to amend its Amended Complaint to allege that Microsoft had pre-suit knowledge of the alleged infringement of the asserted patents. In fact, as explained *supra*, the Amended Complaint suggests the opposite—D3D did not believe that HoloLens incorporated the technology of the asserted patents; to the contrary, D3D "believed that the ***HoloLens would be significantly enhanced if it used D3D's true 3D technology***." *See* Am. Compl. ¶ 27 (emphasis added). Microsoft therefore respectfully requests that D3D's indirect infringement claims be dismissed with prejudice.

## V. CONCLUSION

For at least the foregoing reasons, Microsoft respectfully requests that the Court dismiss (A) all of D3D's IVAS-based infringement claims; and (B) all of D3D's indirect infringement claims, without leave to amend.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

The undersigned counsel certifies that counsel for Defendant has conferred with Plaintiff's counsel in a good faith effort to resolve the issues presented in this motion. Counsel were unable to agree on the resolution of the motion.

Date: December 11, 2020          Respectfully submitted,

By:   */s/ Jacqueline Tio*_____

          Daniel C. Johnson
          CARLTON FIELDS, P.A.
          Trial Counsel
          Florida Bar No. 522880
          200 S. Orange Avenue, Suite 1000
          Orlando, Florida 32801-3456
          Tel. No.: (407) 849-0300
          Fax No.: (407) 648-9099
          Email: djohnson@carltonfields.com
          Secondary: dcarlucci@carltonfields.com
          Secondary: orlecf@cfdom.net

          Eleanor M. Yost
          CARLTON FIELDS, P.A.
          Trial Counsel
          Florida Bar No. 1003178
          4221 W. Boy Scout Boulevard
          Suite 1000
          Tampa, Florida 33607-5780
          Tel. No.:  (813) 229-4395
          Fax No.:  (813) 229-4133
          Email: eyost@carltonfields.com

          Jacqueline Tio (*pro hac vice*)
          GA Bar No. 940367
          Aamir A. Kazi (*pro hac vice* to be filed)
          GA Bar. No. 104235
          FISH & RICHARDSON P.C.
          Trial Counsel
          1180 Peachtree Street, NE, 21st Floor
          Atlanta, GA 30309
          Tel. No.: (404) 892-5005
          Fax No.: (404) 892-5002
          Email: tio@fr.com
          kazi@fr.com

          Juanita R. Brooks (*pro hac vice* to be filed)
          CA SBN 75934
          FISH & RICHARDSON P.C.
          Trial Counsel

12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel. No.: (858) 678-5070
Fax. No.: (858) 678-5099
Email: brooks@fr.com

Betty H. Chen (*pro hac vice* to be filed)
CA SBN 2905885
FISH & RICHARDSON P.C.
Trial Counsel
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel. No.: (650) 839-5070
Fax No.: (650) 839-5071
Email: chen@fr.com

*Attorneys for Defendant Microsoft
Corporation*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing has been

furnished, electronically, through the CM/ECF system, to all counsel of record on this 11th day

of December, 2020.

*/s/ Jacqueline Tio*
Jacqueline Tio
